UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

| | |
|---|---|
| TEMPLE PARTON, individually and On behalf of all others similarly situated, </br></br> Plaintiff, </br></br> v. </br></br> LRS HEALTHCARE, LLC, </br></br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) </br> Case No. </br></br> **JURY TRIAL DEMANDED** |

## COLLECTIVE ACTION COMPLAINT

Plaintiff Temple Parton ("Plaintiff") brings this collective action complaint against LRS Healthcare, LLC ("LRS"), on behalf of herself and all others similarly situated pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. Plaintiff makes the following allegations based upon personal knowledge as to her own actions and upon information and belief as to all other matters.

## NATURE OF ACTION

1. In our nation's healthcare system, nurses are in high demand. Especially in areas where the cost of living is increasing, hospitals, clinics, and other healthcare facilities rely on traveling nurses to fill nursing employment gaps on a temporary basis. To fill these roles, healthcare facilities use staffing agencies to employ traveling nurses, negotiate contracts, and schedule the assignments. The rise of travel nurse staffing agencies has helped the healthcare industry address the trenchant problem of the gap between the rising cost of living in major markets and the typical base pay rate for skilled nurses. LRS is a national staffing agency that recruits and contracts with travel nurses to fill urgent workforce gaps. As part of this arrangement, LRS offers compensation packages that include not just hourly wages but also weekly housing stipends and per diem allowances.

1

2. Yet in calculating overtime, LRS excludes those very stipends and per diems from its employees' "regular rate of pay," thereby reducing the time-and-a-half rate required under federal law and shortchanging employees who routinely work more than 40 hours per week. By law, employers must pay their employees one and half times their "regular rate" for all hours worked over forty in a workweek. However, in determining the regular rate, LRS includes only its employees' direct, hourly cash wage, but has excluded other parts of its employees' compensation packages, resulting in an artificially low rate of pay for overtime hours worked. This practice violates the FLSA.

3. LRS's housing stipends and per diem payments are not tied to actual, substantiated expenses, nor were they excluded from wages by law. To the contrary, these payments were a core component of compensation that were fixed in advance, paid regardless of expenses incurred, and reduced or withheld if an employee missed a scheduled shift.

4. LRS's conduct was not the result of oversight or mistake. It is part of a deliberate business strategy: to advertise artificially low hourly rates, supplement them with "stipends" misclassified as tax-free reimbursements, and, in doing so, minimize both payroll tax liability and overtime obligations.

5. Ms. Parton, like dozens of similarly situated LRS employees, worked weeks in excess of 40 hours and was compensated under this flawed scheme. Her overtime was paid at rates far below what the law requires because those rates often use a base rate that was less than half of her true effective wage when stipends are properly accounted for.

6. Through this action, Plaintiff seeks unpaid overtime compensation, liquidated damages, attorneys' fees, and all other relief available under the FLSA for herself and for the proposed FLSA Collective of travel nurses who were subjected to the same unlawful compensation practices.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over the FLSA claims pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331, because Plaintiff alleges violations of the FLSA, a federal statute.

8. This Court has personal jurisdiction over LRS because it has its principal place of business in Omaha, Nebraska. LRS is "at home" in the State of Nebraska and is therefore subject to general jurisdiction in this District.

9. Venue is proper in this District under 28 U.S.C. § 1391(b) because this is the District in which LRS resides and a substantial part of the conduct at issue in this case occurred in this District.

## PARTIES

10. Plaintiff, Temple Parton, is an individual and resident of the State of Florida. At all relevant times, she was employed by LRS as a travel nurse and was assigned to work in multiple states, including Florida, South Carolina, and Alabama. Plaintiff's Consent to Join is attached hereto as **Exhibit 1**.

11. Plaintiff and other similarly situated employees have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq*.

12. Plaintiff and other similarly situated employees were LRS's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

13. LRS is a limited liability company with its principal place of business located at 1120 N 103rd Plaza, Suite 300, Omaha, Nebraska. LRS contracts with healthcare professionals to provide temporary staffing services at hospitals and medical centers nationwide. At all relevant times, LRS

employed the Plaintiff and other similarly situated individuals as non-exempt employees within the meaning of the FLSA.

14. LRS has been an enterprise engaged in commerce or in the production of goods or services for commerce within the meaning of 29 U.S.C. § 203(s)(1), and, upon information and belief, has an annual gross volume of sales made or business done of not less than $500,000.

15. During all relevant times to this action, LRS acted as the "employer" of Plaintiff and other similarly situated employees within the meaning of the FLSA. 29 U.S.C. § 203(d).

## STATEMENT OF FACTS

### *Statutory and Regulatory Framework*

16. The FLSA was enacted in 1938 to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). Central to this goal is the requirement that employers pay non-exempt employees premium compensation for hours worked in excess of 40 in a workweek. *See* 29 U.S.C. § 207(a)(1).

17. Under the FLSA, employers must pay employees "at a rate not less than one and one-half times the regular rate at which [they are] employed" for all time worked in excess of 40 hours in a given workweek. *Id*.

18. The statute defines "regular rate" to include "all remuneration for employment paid to, or on behalf of, the employee," subject to only a limited set of statutory exclusions. 29 U.S.C. § 207(e), such as gifts, premium pay, or purely discretionary bonuses. Unless an employer can affirmatively demonstrate that a payment falls squarely within one of the listed exclusions, it must be included in the regular rate when calculating overtime. *Smiley v. E.I. DuPont De Nemours & Co.*, 839 F.3d 325, 330 (3d Cir. 2016) ("Thus, the regular rate is a readily definable mathematical

calculation that is explicitly controlled by the FLSA") (citing *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424–25 (1945)). Indeed, "the regular rate by its very nature *must* reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments." *Walling*, 325 U.S. at 424 (emphasis added).

19. The Department of Labor's ("DOL") implementing regulations further clarify that the parties do not get to decide for themselves what is included in the regular rate but look to the FLSA and its implementing regulations. *See* 29 C.F.R. § 778.108 (citing *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 464 (1948). Unless the payment is for bona fide expense reimbursement or qualifies under another narrow exception, "all remuneration for employment" must be included in the "regular rate." *Smiley*, 839 F.3d at 330 ("*[o]nly the statutory exclusions* [listed in section 207(e)(1)-(8)] *are authorized.* . . . [A]ll remuneration for employment paid which does not fall within one of these seven exclusionary clauses must be added into the total compensation received by the employee before his regular hourly rate of pay is [to be] determined." (citing 29 C.F.R. § 778.200(c))).

20. Even when a payment is characterized as a "reimbursement" it must be included in the regular rate calculation unless it is in repayment of an actual expense incurred. This is especially true when the so called "reimbursement" actually functions as compensation for work performed. *See Clarke v. AMN Servs., LLC*, 987 F.3d 848, 856 (9th Cir. 2021) (reversing the district court and finding that reimbursements were, in effect, wages that were improperly excluded from the "regular rate.").

*LRS Improperly Excludes Stipends from the Regular Rate*

21. LRS has implemented and maintained a company-wide scheme that violates the FLSA's overtime provisions by systematically failing to include substantial and recurring weekly

5

payments—labeled "Housing Stipends" and "Per Diems"—in its employees' regular rate of pay when calculating overtime.

22. To facilitate its assignments, LRS negotiates compensation packages that typically include a modest hourly wage, a weekly housing stipend, and a weekly per diem. These packages are memorialized in standardized employment agreements that LRS issues to its traveling employees.

23. These form contracts, or employment agreements, include the following material terms that are customized to each contract:

- the location of the facility where work is to be performed,
- the dates of the assignment,
- the shift length requirements,
- the hourly rates for "Standard," "Overtime," "On-Call, and "Call-Back" pay,
- the amount of the "Housing Stipend," and
- the amount of the "Per Diems."

24. For instance, Plaintiff is a radiology technologist who contracted with LRS for assignments in Florida, South Carolina, and Alabama. On February 17, 2025, she entered into a "Travel Medical Professional Services Agreement" with LRS with placement at Fort Walton Beach Medical Center. Under that contract, she was promised the following compensation:

- A base "Standard" hourly wage of $18.00;
- Overtime pay at $29.35;
- A weekly housing stipend of $770 per week; and
- A weekly per diem of $310 per week.

25. The stipend and per diem were not reimbursements for actual, documented expenses.

The amounts of the housing stipend did not change based on the actual amounts Plaintiff paid for housing, and likewise, the per diem did not change based on the amount Plaintiff paid for food. Nor did Plaintiff need to provide receipts, mileage logs, or attestations of payment to be eligible for the housing and per diem stipends. Instead, those amounts were paid regardless of whether Plaintiff traveled or incurred any unusual costs.

26. Rather, the housing and per diem stipends were essential components of Plaintiff's total compensation, fixed in advance and reduced only if Plaintiff missed a shift.

27. In fact, the Agreement included a clause titled "Missed Shift Adjustment," which granted LRS the ability to reduce the weekly stipend and per diem "in proportion to the number of shifts missed, depending upon the reason for the missed shift." Thus, despite labeling housing and per diem amounts as "stipends," these payments were tied to Plaintiff's hours worked, not reimbursement for actual expenses.

28. LRS paid the stipends in order to offset its practice of offering a below market hourly wage. With the stipends included LRS could still maintain competitive overall compensation packages to attract talented employees while artificially decreasing the hourly rate on paper. Nevertheless, for FLSA purposes, the housing and per diem stipends should have been included in the regular rate calculation. By excluding these amounts from the "regular rate" of pay when calculating overtime, LRS underpaid Plaintiff and similarly situated employees their overtime by hundreds of dollars per week, in violation of the FLSA.

29. LRS's scheme is clear when the amounts actually paid to Plaintiff are included. With respect to Plaintiff, for the pay period from October 13 to October 19, 2024, Plaintiff worked 51.5 total hours. She received:

    a. $18.00 for the first 36.01 hours;

  b. $21.00 for the next 3.99 hours; and

  c. $29.25 for the last 11.5 hours.

As a result, according to LRS, her total wages for that week were $1,068.35. During that week she also received a "Housing Stipend" of $770.00 and a "Per Diem" of $310.00, for a total of $1,080 in weekly stipends, resulting in total compensation of $2,148.35 (excluding the underpaid overtime differential). However, LRS calculated her overtime rate of $29.25 based solely on the $18.00 base rate, rather than incorporating the value of the stipends. When properly incorporated, by taking her total compensation ($2,148.35) and dividing it by her total hours worked (51), Plaintiff's "regular rate" for that week should have been $35.18. That makes sense because it closely aligns with the DOL prevailing wage estimate of $32.65 per hour for radiologic technologists in that area. As a result, Plaintiff was underpaid by at least $270.55 that week alone.

  30. LRS's exclusion of the various stipends and allowances paid to its employees, including the "Housing Stipend" and "Per Diem" from said employees' "regular rate" in calculating overtime was wrongful and in violation of the law, in that the stipend payments:

  a. functioned as compensation for the employees' hours of employment;

  b. functioned to make up the difference between employees' artificially low hourly cash wage and the typical or prevailing wage for a skilled nurse in the locations where employees were sent to work;

  c. functioned to reduce employees' hourly cash wage by enticing employees with extra remuneration for their benefit despite the artificially low hourly cash wage;

  d. were tied to the number of hours worked, rather than the amount of expenses actually incurred;

  e. varied with the number of hours worked per week, such that if an employee missed

one or more shifts, said payments would be reduced by a corresponding amount;

f. did not vary with the amount of expenses an employee actually incurred, nor were they calculated to approximate actual expenses. Employees were not required to document expenses, nor provide any attestation that he or she actually incurred a particular amount of expenses in a given period;

g. in Plaintiff's case, were paid even when Plaintiff was working locally, close to her home, when no compensable travel expenses were incurred;

h. Upon information and belief, other employees received the payments even when they were working locally and not traveling;

i. Upon information and belief, employees could roll over extra shifts worked in a previous week to avoid a pro rata reduction in the payments occasioned by having missed one or more shifts in a given week.

31. Plaintiff and other similarly situated employees are victims of uniform and unlawful compensation policies, as LRS maintains a company-wide policy and practice of failing and refusing to pay wages due and owing to Plaintiff and other similarly situated employees, and said policy is willful in nature and not the result of a good-faith mistake.

32. Upon information and belief, LRS's scheme was deliberate and systemic. LRS's failure to include housing and per diem stipends in the regular rate affected all similarly situated employees. LRS's classification of these payments as non-wage reimbursements was not only incorrect but part of a broader scheme to reduce tax obligations, lower overtime payments for employees working more than 40 hours each week, attract workers with higher "blended rates" while keeping base wages low, and, critically, to shift compensation into tax-advantaged categories not subject to withholding. These practices directly benefited LRS and violated 29 U.S.C. § 207 and

applicable DOL regulations.

33. LRS did not act in good faith nor did it have reasonable grounds to believe that its actions and omissions complied with the FLSA. As a result, Plaintiff and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid wages as described by Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b).

34. Plaintiff and other similarly situated employees are entitled to damages equal to the mandated overtime premium pay within the three (3) years preceding the filing of this Complaint, plus periods of equitable tolling, because LRS acted willfully and knew, or showed reckless disregard of whether, its conduct was prohibited by the FLSA.

35. As a result of LRS's policy, Plaintiff and all others similarly situated were deprived of full and lawful overtime compensation for work performed beyond forty hours in one or more workweeks, in violation of 29 U.S.C. § 207(a). Accordingly, pursuant to 29 U.S.C. § 216(b), LRS is liable for the unpaid minimum wages and overtime premium pay along with an additional amount as liquidated damages, pre-judgment, and post-judgment interest, reasonable attorneys' fees, and costs of this action.

## COLLECTIVE ACTION ALLEGATIONS

36. Plaintiff brings Count I, for violation of the FLSA, 29 U.S.C. § 207, as a collective action under 29 U.S.C. § 216(b) on behalf of herself and all similarly situated current and former employees of LRS who were subjected to the company's unlawful compensation scheme. The FLSA Collective is defined as:

> All current and former hourly, non-exempt employees of LRS who, at any time within three years preceding the filing of this action, plus periods of equitable tolling, worked more than 40 hours in a workweek and received housing stipends, per diems, or other compensation that was not included in their regular rate of pay when

calculating overtime compensation.

Plaintiff's FLSA claim may be pursued by those who opt-in to this case, pursuant to 29 U.S.C. § 216(b).

37. LRS uniformly excluded housing stipends and per diem payments from the regular rate of pay used to calculate overtime compensation, regardless of the state or facility where the employee worked. This exclusion violated the FLSA and uniformly affected all members of the proposed Collective.

38. Plaintiff and the members of the proposed Collective are "similarly situated" within the meaning of 29 U.S.C. § 216(b) because they were all subject to the same company-wide policy and practice that misclassified compensation and underpaid overtime.

39. The collective members performed similar job functions, were subject to the same material terms of employment, received similarly structured compensation packages, and were victims of the same unlawful pay practices.

40. Resolution of this action does not require individualized inquiries into job duties or pay structures. To the contrary, the legality of LRS's compensation scheme turns on common questions of law and fact that are capable of collective resolution, including, but not limited to:

- Whether LRS's housing stipends and per diem payments constitute "remuneration for employment" under the FLSA and the applicable regulations;

- Whether those payments were excludable from the regular rate of pay under the FLSA or its implementing regulations;

- Whether LRS acted willfully in excluding such compensation from overtime calculations;

- Whether Plaintiff and other Collective members are entitled to liquidated damages; and

- The appropriate method of determining damages.

41. Plaintiff reserves the right to modify or amend the definition of the proposed Collective before the Court determines whether conditional certification is appropriate.

42. Plaintiff, individually and on behalf of all others similarly situated, seeks relief on a collective basis challenging LRS's above-described FLSA violations. The number and identity of other plaintiffs yet to opt-in and consent to be party plaintiffs may be determined from LRS's records, and potential opt-in plaintiffs may easily and quickly be notified of the pendency of this action.

**COUNT I**
**Violation of the FLSA, 29 U.S.C § 207**
**(On behalf of Plaintiff and the FLSA Collective)**

43. Plaintiff realleges and incorporates by reference paragraphs 1–42 as though fully set forth herein.

44. At all relevant times, Plaintiff and the members of the FLSA Collective were employees of Defendant within the meaning of 29 U.S.C. § 203(e), and LRS was their employer within the meaning of 29 U.S.C. § 203(d).

45. The FLSA, 29 U.S.C. § 207(a), requires covered employers to pay non-exempt employees at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of forty (40) in a single workweek.

46. LRS knowingly failed to include all remuneration for employment. Specifically, LRS failed to include housing stipends, per diems, and similar payments in its calculation of the regular rate of pay for Plaintiff and other similarly situated employees, thereby artificially deflating the overtime rate.

47. These stipends were not tied to actual, itemized expenses, nor were they excludable under any statutory or regulatory exception set forth in 29 U.S.C. § 207(e) or 29 C.F.R. §§ 778.108–778.219.

48. LRS's failure to include these amounts in the regular rate violated the FLSA's overtime provisions and resulted in systematic underpayment of overtime compensation.

49. LRS's violations were willful and not the result of good faith or reasonable grounds. LRS acted with reckless disregard for the requirements of the FLSA and failed to take steps to comply with clearly established law.

50. As a result, Plaintiff and the FLSA Collective are entitled to recover unpaid overtime wages, an equal amount in liquidated damages, attorneys' fees, costs, and interest pursuant to 29 U.S.C. § 216(b).

51. At all times relevant to this action, Plaintiff and other similarly situated employees were employed by LRS.

52. LRS violated the FLSA by failing to pay Plaintiff for all overtime hours worked at one and one-half times the regular rate for all hours worked in excess of forty hours in a workweek.

53. Specifically, the FLSA requires that employees are paid one and one-half times their "regular rate" of pay. The "regular hourly rate of pay of an employee is determined by dividing his or her total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109.

54. LRS improperly reduced its employees' regular rate when calculating overtime by wrongfully excluding certain forms of compensation, including stipends and other forms of mischaracterized payments.

55. In so doing, LRS failed to properly compensate Plaintiff for overtime worked pursuant to the FLSA.

56. LRS is not eligible for any FLSA exemption excusing their failure to pay overtime.

57.     Plaintiff is a victim of a uniform, company-wide compensation policy.

58.     Plaintiff is entitled to damages equal to the mandated overtime premium pay within the three years preceding their joining this action, plus periods of equitable tolling, because LRS acted willfully and knew, or showed reckless disregard of whether, its conduct was prohibited by the FLSA.

59.     LRS has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result thereof, in addition to their other damages, Plaintiff is entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime pay pursuant to 29 U.S.C. § 216(b). Alternatively, should the Court find LRS did act with good faith and reasonable grounds in failing to pay overtime pay, Plaintiff is entitled to an award of prejudgment interest at the applicable legal rate.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Temple Parton, individually and on behalf of the FLSA Collective and the Class, respectfully requests that the Court enter judgment in her favor and against LRS and grant the following relief:

a. An order certifying this action as a collective action under 29 U.S.C. § 216(b) and authorizing notice to be issued to all similarly situated individuals;

b. An order certifying the proposed Class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

c. An order designating Plaintiff as the Class Representative for the Class and as the representative of the FLSA Collective;

d. An order appointing the undersigned counsel as Class Counsel under Rule 23(g) and as counsel for the FLSA Collective;

e. An award of unpaid overtime compensation to Plaintiff, the FLSA Collective, and the Class in an amount to be determined at trial, together with liquidated damages as permitted by the FLSA;

    f.  An award of compensatory damages to Plaintiff and the Class for breach of contract and/or unjust enrichment in an amount to be determined at trial;

    g.  Pre-judgment and post-judgment interest on all monetary amounts awarded as permitted by law;

    h.  An award of reasonable attorneys' fees, costs, and expenses pursuant to 29 U.S.C. § 216(b) or as otherwise permitted by law; and

    i.  Such other and further legal or equitable relief as the Court deems just and proper

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a jury trial on all claims so triable.

By: */s/Raymond R. Aranza*
Raymond R. Aranza #18523
Walentine O'Toole, LLP
11240 Davenport Street
P. O. Box 540125
Omaha, NE 68154
Phone: (402) 330-6300
Fax: (402) 330-6303
raranza@walentineotoole.com

LOCAL COUNSEL FOR PLAINTIFF

AND

**SIRI & GLIMSTAD LLP**

William Payne
(*pro hac vice application to be submitted*)
Oren Faircloth
(*pro hac vice application to be submitted*)
Walker D. Moller
(*pro hac vice application to be submitted*)
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
E: wpayne@sirillp.com
E: ofaircloth@sirillp.com
E: wmoller@sirillp.com

*Attorneys for Plaintiff and the Proposed Class*